**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

| | |
|---|---|
| **JOHN P. CAMPBELL,** | ) |
|     **Plaintiff,** | ) |
|     v. | )    **Case No.** _____ |
| **CRAIG J. WILSON,** | ) |
|     2015 Goldknob Road | ) |
|     Salisbury, NC 28146 | ) |
| **DOWNEAST SHIPPING, L.L.C.,** | ) |
|     Jason J. Putney, Its Registered Agent | ) |
|     236 Market Street 100-1004 | ) |
|     Locust, NC 28097 | ) |
| **CJ'S SHIPPING, L.L.C.,** | ) |
|     United States Corporation Agents, Inc., | ) |
|         Its Registered Agent | ) |
|     6135 Park South Drive, Suite 510 | ) |
|     Charlotte, NC 28210 | ) |
| **AMAZON LOGISTICS, INC.,** | ) |
|     Corporation Service Company, Its | ) |
|         Registered Agent | ) |
|     100 Shockoe Slip, Floor 2 | ) |
|     Richmond, Virginia 23219 | ) |
|     AND | ) |
| **AMAZON.COM, INC.,** | ) |
|     Corporation Service Company, Its | ) |
|         Registered Agent | ) |
|     251 Little Falls Drive | ) |
|     Wilmington, DE 19808 | ) |
|     **Defendants.** | ) |

## **COMPLAINT**

COMES NOW John P. Campbell (hereafter "John"), by counsel, and files his Complaint

against Craig J. Wilson (hereafter "Mr. Wilson"), Downeast Shipping, L.L.C. (hereafter

"Downeast"), CJ's Shipping, L.L.C. (hereafter "CJ's"), and Amazon Logistics, Inc. and Amazon.com, Inc. (both hereafter "Amazon") (collectively hereafter "Defendants") and states as follows in support thereof:

1. This personal injury via tractor-trailer collision action concerns a collision that occurred on Wednesday, February 12, 2020 around 7:05 p.m. on Interstate 77 Northbound in Bland County when the tractor-trailer operated by Mr. Wilson on Interstate 77 Southbound turned left off Interstate 77 Southbound through the median going into Interstate 77 Northbound oncoming lanes and striking the tractor-trailer that John was driving (hereafter "the collision").

2. Venue is appropriate pursuant to Virginia Code § 8.01-262(2) because part of John's cause of action arose in the City of Roanoke.

3. To the extent that alternative facts and/or theories of recovery are pled, such is being done pursuant to Virginia law including Virginia Code § 8.01-281(A) and Rule 1:4(k) of the Rules of the Supreme Court of Virginia.

4. Interstate 77 where the collision occurred has two Southbound lanes (a right hand lane and a left hand lane) and two Northbound lanes (a right hand lane and a left hand lane), which are separated by a median.

5. Mr. Wilson was driving a tractor that was owned by Downeast.



{01084371-1}                                2

6. At all times and places pertinent to this action, Mr. Wilson was acting in the course and scope of his employment as an employee of Downeast.

7. At all times and places pertinent to this action, Downeast was Mr. Wilson's employer.

8. At all times and places pertinent to this action, Downeast is vicariously responsible for Mr. Wilson's actions and inactions.

9. At all times and places pertinent to this action, Mr. Wilson was acting in the course and scope of his employment as an employee of CJ's.

10. CJ's Vice President is Mr. Wilson.

11. CJ's President is April Marie Wilson, who is Mr. Wilson's wife.

12. At all times and places pertinent to this action, CJ's was Mr. Wilson's employer.

13. At all times and places pertinent to this action, CJ's is vicariously responsible for Mr. Wilson's actions and inactions.

14. Amazon does business under several fictitious names and symbols including, but not limited to, Amazon Freight, Amazon Transportation Services, Amazon Ground,



.

15. Amazon is a shipping and delivery service intended to complement existing providers like UPS, USPS, and Federal Express.

16. Amazon uses logistics partners for its delivery services.

17. These logistics partners are contracted to pick up deliveries at Amazon warehouses and sorting centers for distribution.

18. Amazon controls its logistics partners including, but not limited to, regarding licensing, vehicle sizing, safety training and insurance, using Amazon technology to guide deliveries, a lengthy and highly competitive selection process, on-site interviews, regular meetings, applications that request extensive information, screening interviews, dictating routes, background checks, credit checks, ability to terminate drivers, ability to terminate logistics partners, requiring written safety programs, requiring use of Amazon's technology and processes, *et cetera*.

19. At all times and places pertinent to this action, Mr. Wilson was acting in the course and scope of his employment as an employee of Amazon.

20. At all times and places pertinent to this action, Amazon was Mr. Wilson's employer.

21. At all times and places pertinent to this action, Amazon is vicariously responsible for Mr. Wilson's actions and inactions.

22. Amazon leased Mr. Wilson and the Downeast tractor that were involved in the collision.

23. Mr. Wilson and Downeast were Amazon's logistics partners.

24. Downeast's tractor was attached to Amazon's trailer.

25. Amazon's trailer had a logo/placard identifying the trailer as Amazon's.





26. Amazon uses trailers, such as the one Mr. Wilson was towing with Downeast's tractor, to transport items from one Amazon warehouse, known as a fulfillment center, to another, as well as between fulfillment centers and sorting centers, where Amazon organizes orders.

27. At the times and places pertinent to this action, Mr. Wilson had a commercial driver's license that was issued through the State of North Carolina on July 25, 2017.

28. About five years before the collision, on January 10, 2015, Mr. Wilson was driving 89 miles per hour in a 60 mile per hour speed limit zone in North Carolina.

29. Mr. Wilson was charged with speeding 89/60 and reckless driving to endanger person or property.

30. Mr. Wilson, with the assistance of counsel, entered into a plea agreement in which the speeding was reduced to 74 miles per hour in a 60 mile per hour speed limit zone, to which Mr. Wilson pled guilty and for which he was convicted, and the reckless driving to endanger person or property was dismissed.

31. About one and a half years before the collision, on August 21, 2018, in Pennsylvania Mr. Wilson operated a vehicle that was in an unsafe condition.

32. Mr. Wilson was charged with operating a vehicle that was in an unsafe condition.

33. Mr. Wilson pled guilty to operating a vehicle that was in an unsafe condition.

34. About four months before the collision, on October 3, 2019, in Maryland Mr. Wilson was driving a vehicle or combination of vehicles with a gross weight exceeding the limit of 34,000 pounds.

35. Mr. Wilson was charged with driving a vehicle or combination of vehicles with a gross weight exceeding the limit of 34,000 pounds.

36. Mr. Wilson pled guilty to driving a vehicle or combination of vehicles with a gross weight exceeding the limit of 34,000 pounds.

37. At all times and places pertinent to this action, Defendants and their employees owed many duties to John and the other vehicles on the highway including, but not limited to:

   a. Properly inspecting tractors and trailer
   b. Obtaining liability and cargo insurance on tractors and trailers
   c. Having control of and being responsible for operating tractors and trailers in compliance with federal regulations and other applicable laws
   d. Not hiring substandard drivers
   e. Not entrusting tractors and trailers to substandard drivers
   f. Not retaining substandard drivers
   g. Ensuring the competency of operators of tractors and trailers
   h. Properly screening motor carriers
   i. Properly investigating motor carriers' safety records
   j. Keeping proper lookout
   k. Driving on the right half of the highway except when overtaking and passing another vehicle

l.  Not driving for a period which, when added to the time driving in any other state, would make an aggregate of more than 13 hours in any 24 hour period

m.  Not driving more than 11 hours after 10 consecutive hours off duty

n.  Taking a 30 minute break when driving for a period of 8 cumulative hours without at least a 30 minute interruption

o.  Not driving beyond the 14th consecutive hour after coming on duty, following 10 consecutive hours off duty

p.  Not following another vehicle more closely than is reasonable and prudent, having due regard to the speed of both vehicles and the traffic on, and conditions of, the highway

q.  Not driving tractors and trailers in a careless or distracted manner

r.  Yielding the right-of-way to those vehicles with the right-of-way

s.  Not driving tractors and trailers into the median

t.  Not driving tractors and trailers into oncoming lanes

u.  Giving way to the right in favor of an overtaking vehicle and not increasing the speed of the vehicle until completely passed by the overtaking vehicle

v.  Not passing or attempting to pass any vehicle going in the same direction on an upgrade if such passing will impede the passage of following traffic

w.  Having a horn in good working order, capable of emitting a sound audible under normal conditions over a distance of not less than 200 feet that is firmly mounted and installed at a location readily accessible to the driver

x.  Utilizing a horn to alert other drivers as a warning

y.  Not driving in the left hand lane unless actively passing another vehicle

    z. Moving to the right to allow an overtaking vehicle to pass

    aa. Not exceeding the posted speed limit

    bb. Not giving adequate and timely signs of intention to turn, partly turn, slow down, or stop

    cc. Not driving tractors and trailers in a manner so as to endanger the life, limb, or property of any person

    dd. Transporting loads safely

    ee. Obeying all traffic laws

    ff. Obeying all safety regulations

    gg. Not working more than 60 hours on-duty over 7 consecutive days or 70 hours over 8 days

    hh. Maintaining accurate and complete driver's logs

    ii. Performing alcohol and controlled substances testing on drivers as soon as practicable following a collision

38. On Wednesday, February 12, 2020 around 7:05 p.m. Mr. Wilson was driving Downeast's tractor attached to Amazon's trailer (hereafter "Defendants' tractor trailer") on Interstate 77 Southbound in the left hand lane.

39. At the same time, there was a vehicle (hereafter "Hyundai") on Interstate 77 Southbound in the left hand lane behind Defendants' tractor trailer.

40. At the same time, John was driving a tractor trailer on Interstate 77 Northbound in the right hand lane.

41. The driver of the Hyundai explains that Defendants' tractor trailer was going slowly in the left hand land, so the Hyundai moved to the right hand lane using his right hand turn signal to pass Defendants' tractor trailer.

42. The driver of the Hyundai explains that he passed Defendants' tractor trailer.

43. The driver of the Hyundai explains that, after passing the Defendants' tractor trailer, he came upon a vehicle in front of him in the right hand lane, so he decided to move the Hyundai into the left hand lane to pass this vehicle.

44. The driver of the Hyundai explains that he looked over his left shoulder into the left hand lane and did not see any vehicle that would prevent him from turning into the left hand lane.

45. The driver of the Hyundai explains that he turned on his left hand turn signal.

46. The driver of the Hyundai explains that, after activating his left hand turn signal and ensuring it was safe to move into the hand lane, he proceeded to turn into the left hand lane.

47. The driver of the Hyundai explains that the Hyundai had collision avoidance technology that included, but was not limited to, blind spot detection that would alert him with an audible and visual warning to avoid a collision if there was a vehicle in his blind spot.

48. Before turning into the left hand lane, the driver of the Hyundai explains that the Hyundai collision avoidance system did not identify or warn him of any potential collision risk.

49. As the Hyundai was turning into the left hand lane, Defendants' tractor collided with the rear and middle section of the driver's side of the Hyundai.



50. At no point in time did Mr. Wilson do anything to warn the Hyundai that it was coming into the lane occupied by Defendants' tractor trailer including sounding the tractor's horn.

51. At no point in time did Mr. Wilson do anything to avoid the collision with the Hyundai including slowing down to allow the Hyundai to turn into the left hand lane.

52. The driver of the Hyundai feels that Defendants' tractor trailer sped up to prevent the Hyundai from turning into the left hand turn lane after having passed Defendants' tractor trailer in the right hand lane.

53. Immediately upon feeling the impact, the Hyundai quickly turned to the right, away from Defendants' tractor trailer.

54. Despite the Hyundai quickly turning to the right, away from Defendants' tractor trailer, Mr. Wilson turned Defendants' tractor trailer to the left going out of the left hand lane, off the shoulder of the road, through the median separating the lanes of Interstate 77 Northbound and Southbound, and into the oncoming lanes of Interstate 77 Northbound.

55. Defendants' tractor trailer collided head-on with John's tractor trailer in the right hand lane of Interstate 77 Northbound.

56. The collision was extremely forceful and violent.







57. Defendants and their employees failed to use the care a reasonable person would have used under the circumstances of this matter and were negligent.

58. As a proximate result of the failure of the Defendants and their employees to use the care of a reasonable person under the circumstances of this matter and their negligence, the collision occurred.

59. If Defendants and their employees had used the care of a reasonable person under the circumstances of this matter and were not negligent, the collision would not have occurred.

60. At all times and places pertinent to this action, John used the care of a reasonable person under the circumstances.

61. At all times and places pertinent to this action, John did not act negligently.

62. At all times and places pertinent to this action, John did not do anything that caused or contributed to the collision.

63. As a result of the collision, John was trapped in the cab of his tractor, and his left leg was pinned under the dash and the driver side seat.

64. Emergency rescue crew members had to extricate John out of the tractor.

65. John's extrication took over an hour.

66. John was seriously injured in the collision.

67. John's injuries included, but were not limited to, chest pain, right arm pain, left arm pain, left leg pain, right leg pain, rib fractures, multiple diffuse abrasions and lacerations, large laceration of the left knee, head injury, traumatic brain injury with loss of consciousness, foot drop, left ankle injury, left knee injury, post-traumatic stress disorder, blood clots, and comminuted fracture of the left acetabulum

68. John was transported to a local community hospital for emergent treatment.

69. At the local community hospital it was recognized that John needed a higher level of care.

70. John needed trauma care so it was decided by his healthcare providers that he needed to be transferred to Carilion Roanoke Memorial Hospital, which is a level one trauma center located in the City of Roanoke.

71. John was transferred to Carilion Roanoke Memorial Hospital for care for and treatment of his serious injuries.

72. John remained at Carilion Roanoke Memorial Hospital for almost a month while receiving care and treatment from many healthcare providers for his serious injuries.

73. Once discharged from Carilion Roanoke Memorial Hospital, he was transferred by medical flight for further care and treatment.

74. As a proximate result of the collision, John has suffered, is currently suffering from and will suffer for the remainder of his life bodily injuries that greatly affect his health, physical pain, mental anguish, disfigurement, deformity, humiliation, embarrassment, inconvenience, medical expenses, lost earnings, and lessening of earning capacity.

75. John requests full and fair compensation for the past, present and future injuries and damages that he suffered as a result of the negligence of the Defendants and their employees.

76. John requests trial by jury on all issues.

WHEREFORE, John P. Campbell, by counsel, moves the Court for judgment against the Defendants, jointly and severally, in the amount of FIFTEEN MILLION DOLLARS ($15,000,000) plus his taxable costs and interest on all of these amounts from February 12, 2020.

JOHN P. CAMPBELL,

_____
By Counsel

Anthony M. "Tony" Russell (VSB No. 44505)
MICHIEHAMLETT, PLLC
109 Norfolk Avenue, 2nd Floor (24011)
P.O. Box 2826
Roanoke, Virginia 24001-2826
540-492-5300
FAX: 540-492-5400
arussell@michiehamlett.com

Les S. Bowers (VSB No. 77840)
MICHIEHAMLETT, PLLC
310 4th Street N.E., 2nd Floor
P.O. Box 298
Charlottesville, Virginia 22902
P: (434) 951-7200
F: (434) 951-7256
lbowers@michiehamlett.com

*Counsel for Plaintiff John P. Campbell*